# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRUSTEES OF THE<br>CONNECTICUT PIPE TRADES<br>LOCAL 777 HEALTH FUND,<br>et al,<br>    Plaintiffs, | :<br>:<br>:<br>:<br>:<br>: | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-847(JCH) |
| NETTLETON MECHANICAL<br>CONTRACTORS, INC. and<br>JOHN J. ROMANIELLO,<br>    Defendants. | :<br>:<br>:<br>: | March 15, 2007 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. NO. 26]
AND PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT [DOC. NO. 29]**

The plaintiffs, Trustees of the Connecticut Pipe Trades Local 777 Health Fund, Annuity Fund, Connecticut State Pension Fund, Apprentice Training Fund, Industry Fund, Trustees of the Plumbers & Pipefitters National Pension Fund, International Training Fund, and Plumbers and Pipefitters Local 777, brought this action against the defendants, Nettleton Mechanical Contractors, Inc. ("Nettleton") and John J. Romaniello to collect contributions owed to the employee benefits fund by Nettleton and Romaniello. The plaintiffs filed this suit pursuant to Sections 502 and 515 of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA").

Romaniello has moved for summary judgment (Doc. No. 26) against the Trustees of the Plumbers & Pipefitters National Pension Fund ("National Pension Fund") and Trustees of the Plumbers & Pipefitters International Training Fund ("International Training Fund") (collectively referred to hereinafter as "National Funds"),

pursuant to Rule 56 of the Federal Rules for Civil Procedure. National Funds has filed a cross motion for summary judgment (Doc. No. 29) against Romaniello, requesting that this court enter a judgment in its favor for the delinquent contributions owed by Romaniello. For the following reasons, Romaniello's motion for summary judgment is denied, and National Funds motion for summary judgment is granted.

I.   **STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II. FACTS[1]

National Funds are two, multi-employer, employee benefit plans as those terms are defined in Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37). National Funds are maintained in accordance with their governing Trust Agreements. Nettleton was, at all relevant times, doing business under the laws of the State of Connecticut, and transacted business as a contractor or subcontractor in the plumbing and pipefitting industry.

Romaniello was the President and a forty-one percent shareholder of Nettleton for twenty-eight years. His tenure as President lasted until at least May 2005. Romaniello's duties included overseeing labor relations at Nettleton and paying the company's bills. In this capacity, Romaniello had authority to direct what bills would be paid by Nettleton. Romaniello authorized the checks for all bills, including checks payable to the National Funds, and authorized Edwin Services, a payroll service, to issue payroll checks to office employees. According to Romaniello, his first priority was ensuring that payroll was paid, followed by vendors and subcontractors.

Nettleton entered into a Collective Bargaining Agreement ("CBA") with Local 777 on August 28, 2002. Romaniello signed the CBA in his capacity as President of Nettleton. Pursuant to the CBA, Nettleton agreed to pay monetary contributions to the Funds for each hour worked by employees covered under the CBA. Consistent with this obligation, Nettleton submitted contribution payments and monthly contribution reports to National Funds from August 2002 until January 2005. Nettleton also agreed

---

[1]The underlying facts of this case are not in dispute.

to be bound to the terms of the Trust Agreements of National Funds.[2]  Pl. Local Rule 56(a)(1) Stat. at ¶ 2 (citing Romaniello Depo. at 15-16, Ex. 1 to Pl. Mem.).  Nettleton employed certain employees covered under the CBA from February 2005 through the present.

Beginning in late 2004, Nettleton began experiencing significant financial difficulties.  As a result, Nettleton became delinquent in its contributions to the National Funds for the months of February through May 2005.  In total, Nettleton failed to make approximately $200, 000 of contributions to the National Funds.  This court entered a default judgment against Nettleton for the amounts owed to all of the plaintiff funds in this case on November 10, 2005 (Doc. No. 14).

Article II, Section 2 of the Trust Agreement establishing the National Pension Fund defines the plan assets of the National Pension Fund as "such sums of money as have been or shall be paid to the Pension Fund by the Employers as contributions required by Collective Bargaining Agreements or signed stipulations."  National Pension Fund Trust Agreement at 15, Appx. B to Pl. Ex. 2.  Article II, Section 2(1) of the Trust Agreement establishing the International Training Fund defines the plan assets of the International Training Fund as "sums of money that have been or will be paid or which are due and owing to the Fund by the Employers as required by the Collective Bargaining Agreements."  Int'l Training Fund Trust Agreement at 6, Appx. B to Pl Ex. 3.

---

[2] While Romaniello denies this assertion, he does not follow this denial with a citation to the record, as required under Local Rule 56(a)(3).  Because the court finds this assertion to be supported by the record, it deems the assertion admitted.  See Local Rule 56(a)(3).

4

## III. DISCUSSION

The major dispute between the parties is whether Romaniello is properly considered a fiduciary such that he may be held personally liable for Nettleton's unpaid contributions to National Funds. Under ERISA, "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). An entity need only have "sufficient control over at least a part of the [plan] assets to create a fiduciary relationship." United States v. Glick, 142 F.3d 520, 527 (2d Cir.1998) 528. As the Second Circuit has found, the term "fiduciary" includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title. "Thus, whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir.1987).

Citing to caselaw from the Tenth Circuit, Romaniello argues that, "[t]o be a fiduciary, an individual must have at least some role in the use of funds *after* they are set aside and to be used for employee benefits." Def. Mem. at 5 (citing Navarre v. Luna, 406 F.3d 1192 (10th Cir. 2005). Because the funds at issue were unpaid contributions, which Romaniello characterizes as mere "debts," "[t]he act of failing to make contributions to [an employee benefit and pension plan] cannot reasonably be construed as taking part in the 'management' or 'disposition' of a plan asset." Def. Mem. at 5 (quoting Navarre, 406 F.3d at 1204) (citations omitted). Romaniello argues

that, while he may have had a contractual duty to make the contributions at issue, and that while his decision to pay other creditors instead of National Funds may constitute a breach of his contractual duty, this breach of his contractual duty does not equate to a breach of any fiduciary duty. Def. Mem. at 8.

The court finds that Romaniello's reliance on <u>Navarre</u> is misplaced. Like the present case, <u>Navarre</u> involved administrators of a benefits plan ("Trustees") suing an employer for failing to make contributions to the benefits plan. <u>Navarre</u>, 406 F.3d at 1197. The Tenth Circuit addressed the question of when a fiduciary can be said to exercise control over unpaid contributions to benefits plan. One difficulty for the Tenth Circuit in resolving this issue was its finding that the CBA and relevant trust documents were "at best ambiguous regarding the point when unpaid contributions became plan assets." <u>Navarre</u>, 406 F.3d at 1201. Without any guidance from the CBA and other trust documents, the court turned to the common law of property to decide whether the unpaid contributions at issue were plan assets. <u>Id.</u> at 1199. The court ultimately defined the plan assets as the Trustees' contractual right to collect unpaid contributions, rather than the unpaid contributions themselves. <u>Id.</u> at 1200. Because the contractual right to collect unpaid contributions belonged solely to the Trustees, the employers "exercised no control over how the Trustees manage or dispose of that asset." <u>Id.</u> 1204. The court's simple conclusion from this was that, with no control over the Trustees' contractual right, the employers could not be considered a fiduciary of the plan's assets.[3] <u>Id.</u>

---

[3] The court considered, but did not resolve, how it would decide the case had it found that the plan assets were the unpaid contributions themselves. <u>Navarre</u>, 406 F.3d at 1204.

Even if this court accepts the reasoning of the Tenth Circuit in Navarre, that case is not, as Romaniello suggests, "on all fours with the case at bar." Def. Mem. at 5. The key difference between this case and Navarre is that the Trust Agreements here are clear in defining unpaid contributions to the plan as plan assets. See National Pension Fund Trust Agreement at 15 (defining plan assets as "such sums of money as have been or *shall be paid* to the Pension Fund by the Employers") (emphasis added) and Int'l Training Fund Trust Agreement at 6 (defining plan assets as "sums of money that have or *will be paid or which are due and owing* to the Fund by the Employers") (emphasis added). Because, "the question of when an employer's contribution becomes an 'asset' of a plan must be determined by reference to the rights and obligations created by the underlying wage agreement," the court concludes that Nettleton's due, but unpaid, contributions to the plan were plan assets. See United States v. Panepinto, 818 F.Supp. 48, 51 (E.D.N.Y. 1993); see also Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund v. Temecula Mech., Inc., 438 F.Supp 1156, 1163 (C.D. Ca. 2006) (holding general rule that contributions do not become plan assets until paid to the plan "gives way in the face of language in the plan document identifying unpaid employer contributions as plan assets").

Given this distinction, the issue before the court is not the Navarre dilemma of whether Romaniello exercised discretionary control over National Funds' contractual rights, but whether Romaniello exercised discretionary control over Nettleton's unpaid contributions to the plan. That Romaniello did exercise such discretionary control is readily apparent from the record. Romaniello was the President and forty-one percent shareholder of Nettleton. He signed the CBA on Nettleton's behalf and agreed that

7

Nettleton would be bound by the terms of the National Funds' Trust Agreements. Most importantly, Romaniello admits that his authority to dictate which bills would be paid included satisfying Nettleton's obligations to the plan. As such, Romaniello is properly considered a fiduciary of the plan's assets. See Pension Benefit Guaranty Corp. v. Solmsen, 671 F.Supp. 938, 946 (E.D.N.Y. 1987) (finding a fiduciary duty where defendant had power to authorize and make payments to the plan).

Next, Romaniello contends that, even if he is a fiduciary, he did not breach his fiduciary duty because he acted in good faith on behalf of Nettleton in electing which creditors to pay.[4] In Romaniello's view, a finding of liability would violate the "basic premise of corporate law that an officer of a closely held corporation is not personally liable for the debts of a corporation." Def. Mem. at 9 (citing Rosenfield v. Metals Selling Corp., 229 Conn. 771, 785 (Conn. 1994). At oral argument, counsel for Romaniello cited to the Second Circuit's decision in Sasso v. Cervoni, 985 F.2d 49 (2d Cir. 1993) for the proposition that Romaniello cannot be held strictly liable for Nettleton's debt to National Funds simply by virtue of his position as an officer and shareholder in Nettleton. See Sasso, 985 F.2d at 51. In Romaniello's view, Sasso holds that the only exception to this rule is when an individual corporate officer deprives a trust fund of contributions through defalcation, such as acting in concert with a fiduciary to breach fiduciary obligations or defrauding the trust fund of contributions. See id. (discussing Leddy v. Standard Drywall, Inc., 875 F.2d 383 (2d Cir. 1989) and Lowen v. Tower Asset

---

[4]Romaniello also attempts to use his "good faith" argument to contest his status as a fiduciary. Def. Mem. at 9. However, the question of good faith is not relevant to whether Romaniello is a fiduciary.

8

Management, Inc., 829 F.2d 1209 (2d Cir. 1987)).  It is clear that neither of these factors is present here.

Though this court disagrees with Romaniello's constrained reading of Sasso - the court there explicitly declined to define fully when an individual corporate officer could be held personally liable for a corporation's ERISA obligations, id. at 51 - the more pressing problem for Romaniello is that Sasso is inapposite.  National Funds is not attempting to hold Romaniello liable for Nettleton's debts solely because of Romaniello's status as a corporate officer; rather, National Funds is attempting to hold Romaniello liable for his actions as a fiduciary.  Such a claim was not presented in Sasso, and it is apparent that the Sasso court assumed that the defendant corporate officer was not a fiduciary of the trust in question.  See generally, Sasso, 985 F.2d 49.

In contrast to the corporate officer in Sasso, Romaniello freely "assumed the fiduciary duty to see to the making of contributions to the [p]lan" by signing the collective bargaining agreement.  Solmsen, 671 F.Supp. at 945.  The assumption of such a duty "means that when a corporation is delinquent in its contributions, the fund has a sufficient priority on the corporation's available resources that individuals controlling corporate resources are controlling fund assets."  NYSA-ILA Medical and Clinical Svcs. Fund v. Catucci, 60 F.Supp.2d 194, 201 (S.D.N.Y. 1999).  Thus, when Nettleton experienced financial difficulty, Romaniello breached his fiduciary duty when he exercised his authority to pay other creditors instead of National Funds.  See Solmsen, 671 F.Supp. at 946 ("There is no basis for concluding that a fiduciary can escape liability for misusing plan assets by diverting . . . employee contributions before they reach the investment account.").  Whether Romaniello exercised that authority in

good faith is beside the point. The court therefore finds that Romaniello is liable for the resulting damages.

## IV. CONCLUSION

For the foregoing reasons, Romaniello's Motion for Summary Judgment (Doc. No. 26) is DENIED. National Funds' Motion for Summary Judgment (Doc. No. 29) is GRANTED. The court further finds that Romaniello is liable to National Funds as follows: 1) $27, 634.60 in contributions and $8, 942.10 in interest to National Pension Fund, for a Total of $36, 576.70 and 2) $508.44 in contributions and $147.15 in interest to the International Training Fund, for a total of $655.59. See Pl. Mem. at 12 (requesting damages in the form of contributions and interest owed to National Funds); Ex. 2, Appx C to Pl. Mem. (calculating contribution shortage and interest owed to National Pension Fund at rate of 12% per annum); Ex. 3, Appx. C to Pl. Mem (calculating contribution shortage and interest owed to International Training Fund at rate of 12% per annum).[5] The clerk is hereby directed to close the case.

---

[5] In its Memorandum, National Funds claimed that Romaniello was liable to National Pension Fund for $27, 634.60 in contributions and $7, 564.47 in interest, and was liable to International Training Fund for $508.44 in contributions and $102 in interest. Pl. Mem. at 12. These amounts were calculated as of October 15, 2006. See Ex. 2, Appx. C.; Ex. 3, Appx. C. The court calculated the additional interest owed to National Funds in the following manner. As indicated in National Funds' submissions, the court used an interest rate of 12% per annum for the delinquent contributions. Id. As there was no indication to the contrary, the court assumed that this was a simple, rather than compounding, interest rate. It then determined that 150 days have passed since October 15, 2006, the final date of National Funds' calculations, and March 15, 2007, the date of this court's Ruling. The court then converted the 150 days into years by dividing 150 by the 365 days in an average year, yielding .41 years. Thus, for a simple interest calculation, the additional interest owed by Romaniello to National Funds equals the product of the contributions owed to National Funds, the .41 years the contributions have been delinquent since October 15, 2006, and the per annum interest rate of 12%.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 15th day of March, 2007.

       /s/ Janet C. Hall
      Janet C. Hall
      United States District Judge